**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| KEYONNA JONES, individually and on behalf of a class of all persons and entities similarly situated, | : : : : | Case No. |
| Plaintiff, | : : | |
| v. | : : | |
| | : | JURY DEMANDED |
| MUTUAL OF OMAHA INSURANCE COMPANY, | : : | |
| | : | |
| Defendant. | : : | |
| _____ / | | |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      As the Supreme Court explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      Plaintiff Keyonna Jones alleges that Mutual of Omaha Insurance Company ("Mutual of Omaha") hired a third party to send pre-recorded telemarketing calls to her cellular telephone and those of other putative class members for the purposes of advertising their insurance goods and services, which is prohibited by the TCPA.

3.      Because the calls to Plaintiff were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff bring this action on behalf of proposed nationwide a class of other persons who were sent the same illegal telemarketing calls.

4.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5.      Plaintiff Keyonna Jones is an individual residing in this District.

6.      Defendant Mutual of Omaha Insurance Company is a Nebraska company with its principal place of business in Nebraska.

## Jurisdiction & Venue

7.      The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

8.      The Court has personal jurisdiction over Mutual of Omaha Insurance Company because it offers insurance services in this District as a result of telemarketing calls into this District that it authorized.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because the calls at issue were made into this District.

## The Telephone Consumer Protection Act

10.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

11.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…or any service for which the called party is charged for the call."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

12.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

13.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

## Factual Allegations

15.     Mutual of Omaha offers insurance policies to consumers through its network of agents.

16.     One of Mutual of Omaha's strategies for marketing their insurance policies and generating new customers is telemarketing done by the third parties they hire for that express purpose.

17.     This telemarketing includes the use of pre-recorded messages to generate new business for Mutual of Omaha.

18.     Recipients of these calls, including Plaintiff, did not consent to receive such telephone calls.

Call to Ms. Jones

19.     Ms. Jones is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

20.     Ms. Jones's cellular phone number is on the National Do Not Call Registry.

21.     Despite this, she received a pre-recorded call to that phone number on March 25, 2022.

22.     The pre-recorded message attempted to qualify the Plaintiff for Mutual of Omaha's products and specifically requested that the call recipient to "press 1" if they were over the age of 50.

23.     The call was clearly pre-recorded because (1) it had an automated message prompt, (2) it had an unnatural pause at the beginning of the call, (3) it was generic and commercial, and (4) it had a voice with an unnaturally consistent tone.

24.     Ms. Jones responded to the recorded message to identify who was calling her illegally.

25.     During the next part of the solicitation, Mutual of Omaha's insurance services were promoted.

26.     Ms. Jones was then transferred and talked to Eric Chambers, who identified himself as an employee of Mutual of Omaha.

27.     Indeed, Mr. Chambers provided a call back number of (844) 579-5586.

28.     That is a number for Mutual of Omaha.

29.     Ms. Jones received similar calls from spoofed Caller ID numbers on March 22, 2022.

30.     Indeed, prior to filing this lawsuit, Ms. Jones contacted Mutual of Omaha.

31.     Mutual of Omaha did not provide any evidence that Ms. Jones had consented to receive the call at issue.

32.     The privacy of Ms. Jones and the putative class members was infringed upon because the pre-recorded telemarketing calls occupied their telephone lines from legitimate communications.

## **Mutual of Omaha's Liability for the Teleamarketing Conduct**

33.     For twenty-five years the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

34.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

35.     In that ruling, the FCC instructed that sellers such as Mutual of Omaha may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent'

---

[1]     *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

36.     Mutual of Omaha does not make their own telemarketing calls.

37.     Instead, as they've told other consumers, "We partner with third parties who collect names who call people."

38.     The party that physically dialed the calls was required to promote Mutual of Omaha's products on their telemarketing calls in order to potentially generate new customers, and did so, as they did with the Plaintiff.

39.     During this time, Mutual of Omaha was knowingly and actively accepting the business that originated through the illegal telemarketing calls through the issuance of insurance policies.

40.     Mutual of Omaha derived a benefit from the calling party's interaction with the Plaintiff by the attempted issuance of a policy.

41.     Moreover, Mutual of Omaha maintained interim control over the calling party's actions.

42.     For example, Mutual of Omaha had ability to prohibit it from using pre-recorded methodology to contact potential customers.

43.     Mutual of Omaha failed to make such an instruction to the party that physically dialed the call, and as a result, is liable for party that physically dialed the call's conduct.

44.     Mutual of Omaha also gave interim instructions to the third party by providing the volume of calling and leads it would purchase.

45.     Mutual of Omaha gave further interim instructions to the dialing party by providing the states that those companies were allowed to make calls into and restricting other states that they could not.

46.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

<u>**Class Action Statement**</u>

47.     As authorized by Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

48.     The Class of persons Plaintiff proposes to represent includes:

All persons within the United States to whom: (a) a third party acting on Mutual of Omaha's behalf, made one or more non-emergency telephone calls for Mutual of Omaha; (b) to their cellular telephone number or number that is charged per the call; (c) using an artificial or prerecorded voice; (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

49.     Excluded from the Class are the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

50.     The proposed Class members are identifiable through phone records and phone number databases, which are with the Defendant or their agents.

51.     The automated technology used to contact the Plaintiff is capable of contacting hundreds of thousands of people a day, and so the potential Class members number in the thousands, at least. Individual joinder of these persons is impracticable.

52.     Plaintiff is a member of the Class.

53.     There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

      a.    Whether Mutual of Omaha is vicariously liable for the conduct of the calling party;

      b.    Whether the calls were placed without obtaining the recipients' valid prior express consent;

      c.    Whether the Defendant's violations of the TCPA were negligent, willful, or knowing; and

      d.    Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

54.     Plaintiff's claims are based on the same facts and legal theories as the claims of all class members, and therefore are typical of the claims of class members, as the Plaintiff and class members all received telephone calls through the same or similar dialing system and pre-recorded message on a cellular telephone line.

55.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class, she will fairly and adequately protect the interests of the Class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

56.     In fact, the Plaintiff has foregone a simpler path to recovery by filing this matter as a putative class action, as opposed to an individual claim.

57.     The actions of the Defendant are generally applicable to the Class and to Plaintiff.

58.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

59.     The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

60.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA, 47 U.S.C. § 227(b)

61.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

62.     The foregoing acts and omissions of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to Plaintiff and members of the Class using a pre-recorded message.

63.     If the Defendant's conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

64.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, using a prerecorded voice in the future.

<u>**Relief Sought**</u>

For himself and all class members, Plaintiff requests the following relief:

A.     Certification of the proposed Class;

B.     Appointment of Plaintiff as representative of the Class;

C.     Appointment of the undersigned counsel as counsel for the Class;

D.     A declaration that Defendant and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.     An order enjoining Defendant and/or their affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.     An award to Plaintiff and the Class of damages, as allowed by law;

G.     Leave to amend this Complaint to conform to the evidence presented at trial; and

H.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**


PLAINTIFF,
By her attorneys,

*/s/ John McGowan*
John McGowan
Kinner & McGowan, PLLC
413 East Capitol Street SE, First Floor
Washington, D.C. 20003
jmcgowan@kinnermcgowan.com

(202) 846-7148

*/s/ Rachel E. Kaufman*
RACHEL E. KAUFMAN
KAUFMAN P.A.
237 S Dixie Hwy, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881
rachel@kaufmanpa.com
*Subject to Pro Hac Vice*