IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEYONNA JONES, individually and
on behalf of a class of all persons and
entities similarly situated

    *Plaintiff*,

    v.

MUTAL OF OMAHA INSURANCE
COMPANY,

    *Defendant*.

Civil Action No. ELH-22-905

**MEMORANDUM OPINION**

Plaintiff Keyonna Jones filed a putative class action suit against Mutual of Omaha Insurance Company ("Mutual of Omaha") alleging violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). ECF 8 ("First Amended Class Action Complaint"). Plaintiff alleges that Mutual of Omaha "hired a third party to send pre-recorded telemarketing calls to her cellular telephone and those of other putative class members for the purposes of advertising their insurance goods and services, which is prohibited by the TCPA." *Id.* ¶ 2.

Mutual of Omaha has moved to dismiss the Amended Complaint for lack of jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 9. The motion is supported by a memorandum of law. ECF 9-1 (collectively, the "Motion"). Plaintiff opposes the Motion. ECF 15. Defendant has replied. ECF 18.

The Motion has been fully briefed and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I.   Factual and Procedural Background[1]

Mutual of Omaha is a Nebraska company with its principal place of business in Nebraska. ECF 8, ¶ 6.  It offers insurance policies to consumers through its network of agents.  *Id.* ¶ 15.

Plaintiff is a resident of Maryland.  *Id.* ¶ 5.  Her cellular phone number is on the National Do Not Call Registry.  *Id.* ¶ 20.  Nevertheless, plaintiff received a phone call on March 25, 2022 (*id.* ¶ 21), with a prerecorded message that attempted to qualify Jones for Mutual of Omaha's products.  *Id.* ¶ 22.  The message asked the "call recipient to 'press 1' if they were over the age of 50."  *Id.*  Plaintiff asserts that the call was prerecorded because "(1) it had an automated message prompt, (2) it had an unnatural pause at the beginning of the call, (3) it was generic and commercial, and (4) it had a voice with an unnaturally consistent tone."  *Id.* ¶ 23.

Jones responded to the recorded message to identify the caller.  *Id.* ¶ 24.  She was transferred to Eric Chambers, "who identified himself as an employee of Mutual of Omaha," *id.* ¶ 26, and "promoted" Mutual of Omaha's insurance services.  *Id.* ¶ 25.  Chambers provided a call back number of (844) 579-5586, which is a number for Mutual of Omaha.  *Id.* ¶¶ 27, 28.  Plaintiff asserts that she "received similar calls from spoofed Caller ID numbers on March 22, 2022."  *Id.* ¶ 29.

According to plaintiff, "[o]ne of Mutual of Omaha's strategies for marketing their insurance policies is telemarketing done by the third parties they hire for that express purpose." *Id.* ¶ 16.  Additionally, she claims that Mutual of Omaha has told consumers that it "'partner[s] with third parties who collect names who call people.'"  *Id.* ¶ 37.  According to Jones, defendant's

---

[1] The facts are derived from the Amended Complaint and are construed in the light most favorable to the plaintiff.

telemarketing "includes the use of pre-recorded messages" made to recipients who have not provided consent.  ECF 8, ¶¶ 17, 18.

In particular, plaintiff asserts that the third party who called her was required to promote Mutual of Omaha's products, and that Mutual of Omaha derived a benefit from the third party's interaction with the plaintiff by the attempted issuance of an insurance policy.  *Id.* ¶¶ 38, 40. Plaintiff also claims that Mutual of Omaha "knowingly and actively accept[ed] the business that originated through the illegal telemarketing calls through the issuance of insurance policies."  *Id.* ¶ 39.

Notably, plaintiff alleges that Mutual of Omaha maintained interim control over the third party's actions because it had the ability to prohibit the third party from using prerecorded calls to contact potential customers.  *Id.* ¶¶ 41, 42.  Jones also claims that Mutual of Omaha gave "instructions" to the third party by "providing the volume of calling and leads it would purchase" as well as "the states that those companies were allowed to make calls into . . . ."  *Id.* ¶¶ 44, 45. And, plaintiff asserts that Mutual of Omaha explicitly informed the third party that it could make calls into Maryland.  *Id.* ¶ 46.

Prior to filing suit, plaintiff contacted Mutual of Omaha.  *Id.* ¶ 30.  Defendant did not provide any proof that Jones had consented to receive the calls.  *Id.* ¶ 31.

Suit followed on April 13, 2022.  ECF 1 (the "Complaint").  Mutual of Omaha moved to dismiss the Complaint for lack of jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 6.  Plaintiff subsequently amended her suit.  ECF 8.[2]  She added the allegation that "Mutual of Omaha explicitly informed

---

[2] In light of the filing of the Amended Complaint, I shall deny, as moot, defendant's initial motion to dismiss (ECF 6).

the third party that it could make calls into Maryland and the third party did make such calls into Maryland when contacting the Plaintiff."  ECF 8, ¶ 46.

Defendant renewed its Motion with respect to the Amended Complaint.   ECF 9. Specifically, Mutual of Omaha argues that plaintiff does not plausibly allege that defendant is either directly or vicariously liable for the calls at issue.  *Id.* at 1.  Additionally, defendant claims that the Court lacks personal jurisdiction over Mutual of Omaha.  *Id.*

In her response, plaintiff states that Mutual of Omaha is vicariously liable for the calls she received based on agency theories of actual authority and ratification.  ECF 15 at 9-11.  And, she argues that "Mutual of Omaha is subject to specific personal jurisdiction in Maryland based on its agent's intentionally tortious conduct directed to and felt in Maryland."  *Id.* at 12.

## II.     Standards of Review

### A.  Rule 12(b)(2)

Mutual of Omaha moves to dismiss for lack of personal jurisdiction, predicated on Fed. R. Civ. P. Rule 12(b)(2).  ECF 9.  "[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter."  *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Under Rule 12(b)(2), a defendant "must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge."  *Id.*; *see UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020). And, the burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence."  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see Grayson*, 816 F.3d at 267.

When "the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer

ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676.  In its discretion, a court may permit discovery as to the jurisdictional issue.  *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993).  However, neither discovery nor an evidentiary hearing is required in order for the court to resolve a motion under Rule 12(b)(2).  *See generally* 4A WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1351 (4d ed. 2019).

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court." *Grayson*, 816 F.3d at 268.  "When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt*., 935 F.3d 211, 226 (4th Cir. 2019); *see Grayson*, 816 F.3d at 268.  In that circumstance, "the district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Hawkins*, 935 F.3d at 226; *accord Sneha Media & Entm't, LLC. v. Assoc. Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 396 (4th Cir. 2003).  However, "[u]nlike under Rule 12(b)(6), the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Hawkins*, 935 F.3d at 226; *see UMG Recordings, Inc.*, 963 F.3d at 350; *Grayson*, 816 F.3d at 268; *Consulting Eng'rs Corp. v. Geometric Ltd*., 561 F.3d 273, 276 (4th Cir. 2009); *Mylan Labs.*, 2 F.3d at 62.

Notably, "'[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'" *Wellington Fin. Corp. v. Flagship Resort Dev. Corp*., 416 F.3d 290, 294 n.5 (4th Cir. 2005) (citation omitted).

5

**B.  Rule 12(b)(6)**

Mutual of Omaha also moves to dismiss under Rule 12(b)(6).  ECF 9.  A defendant may test the legal sufficiency of a plaintiff's complaint by way of a motion to dismiss under Rule 12(b)(6).  *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan*, 918 F.3d at 317-18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include

"detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010).  "A

court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, ___ Fed. App'x ___, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448).

Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]"  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

## III.    Discussion

Fed. R. Civ. P. 4(k)(1)(A) authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state where the district court is located. *Carefirst of Md.*, 334 F.3d at 396.  It is well settled that, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment."  *Id.*; *see Clarke Veneers & Plywood, Inc. v. Mentakab Veneer & Plywood, SDN BHD*, 821 F. App'x 243, 244 (4th Cir. 2020).

Maryland's long-arm statute is codified at Md. Code (2020 Repl. Vol., 2022 Supp.), § 6-103(b) of the Courts & Judicial Proceedings Article ("C.J."). It authorizes "personal jurisdiction over a person, who directly or by an agent," *id.*:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Maryland's courts have "consistently held that the purview of [Maryland's] long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15, 878 A.2d 567, 576 (2005) (citing *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977)); *see CSR, Ltd. v. Taylor*, 411 Md. 457, 472, 983 A.2d 492, 501 (2009) (stating that the long-arm statute authorizes the exercise of personal jurisdiction "'to the full extent allowable under the Due Process Clause'" (citation omitted)); *Bond v. Messerman*, 391 Md. 706, 721, 895 A.2d 990, 999 (2006); *Pinner v. Pinner*, 240 Md. App. 90, 104, 201 A.3d 26, 34 (2019).

Although the long-arm and constitutional due process requirements are distinct, they can be evaluated in tandem. *See Beyond Sys*, 388 Md. at 15, 878 A.2d at 576 ("[O]ur statutory inquiry merges with our constitutional examination."); *accord Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996) ("Because the limits of Maryland's statutory authorization for the

exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.").  Therefore, I shall consider whether the exercise of personal jurisdiction over defendant comports with due process.

The Supreme Court has long held that personal jurisdiction over a nonresident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). The "constitutional touchstone" of personal jurisdiction is that "'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Courts have separated the analysis into individual "prongs."  *ALS Scan, Inc. v. Digital Serv. Consultants*, *Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).  They first ascertain whether the threshold of "minimum contacts" is met, and they then consider whether the exercise of jurisdiction on the basis of those contacts is "constitutionally reasonable."  *Id.*

Due process jurisprudence "recognize[s] two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, ___ U.S. ___, 137 S. Ct. 1773, 1780 (2017) ("*Bristol-Myers*") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol- Myers,* 137 S. Ct. at 1780 (emphasis in original) (citing *Goodyear*, 564 U.S. at 919).  However, in *Daimler AG*

*v. Bauman*, 571 U.S. 117, 137 (2014), the Supreme Court made clear that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."  In particular, as to "'an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'"  *Id.* (quoting *Goodyear*, 564 U.S. at 924).

Specific jurisdiction, on the other hand, exists where the "the suit arise[s] out of or relate[s] to the defendant's contacts with the forum.'"  *Daimler*, 571 U.S. at 127 (citation omitted) (alterations in original).  The Supreme Court recently reiterated: "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'"  *Ford Motor Co. v. Montana Eighth Judicial District Court*, ___ U.S. ___, 141 S. Ct. 1017, 1024 (2021) (citation omitted); *see Burger King*, 471 U.S. at 472–73 (Specific jurisdiction may be established over a defendant who "has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities.") (citation omitted) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Bristol-Myers*, 137 S. Ct. at 1780 (alterations in original) (quoting *Goodyear*, 564 U.S. at 919).

Moreover, the "contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'"  *Ford Motor Co.*, 141 S. Ct. at 1025 (citation omitted).  In other words, the contacts must "show that the defendant deliberately 'reached out beyond' its home – by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there."  *Id.* (citations omitted; alterations in *Ford Motor Co.*); *see Walden v. Fiore*, 571 U.S. 277, 285 (2014).  And, as noted earlier, "the defendant's conduct and connection with the forum State [must

be] such that he should reasonably anticipate being haled into court there." *Woodson*, 444 U.S. at 297.

"For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919); *see Ford Motor Co.*, 141 S. Ct. at 1025.  However, in *Ford Motor Co.*, 141 S. Ct. at 1026, the Supreme Court rejected a "causation-only approach . . . ."  Notably, specific personal jurisdiction may be established without "a causal showing," so long as there is a "strong 'relationship among the defendant, the forum, and the litigation' . . . ." *Id.* at 1028.

Plaintiff does not assert facts sufficient to show that this Court has general personal jurisdiction over Mutual of Omaha.  Instead, plaintiff argues that "Mutual of Omaha is subject to specific personal jurisdiction in Maryland based on its agent's intentionally tortious conduct directed to and felt in Maryland."  ECF 15 at 12.  Therefore, I shall consider only whether the defendant is subject to specific personal jurisdiction in Maryland.

The Fourth Circuit has formulated a three-part test for use in determining whether there is specific jurisdiction over a defendant.  The three prongs are: "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Consulting Eng'rs*, 561 F.3d at 278 (quoting *ALS Scan*, 293 F.3d at 712); *accord Sneha Media & Entm't*, 911 F.3d at 198; *Perdue Foods, LLC v. BRF, S.A.*, 814 F.3d 185, 188 (4th Cir. 2016); *Carefirst*, 334 F.3d at 397.  And, specific jurisdiction is assessed on a claim-by-claim basis.  *See Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 678 (M.D.N.C. 2011) ("When specific jurisdiction

is asserted, jurisdiction must be established for each claim alleged."); *Gatekeeper, Inc. v. Stratech Sys., Ltd*., 718 F. Supp. 2d 664, 666-68 (E.D. Va. 2010) (discussing the doctrinal basis for this rule); WRIGHT & MILLER, § 1069.7 ("[A] plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts.").

The first prong "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs*, 561 F.3d at 278.  In this case, the parties primarily dispute the purposeful availment requirement, which "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random, fortuitous, or attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (internal citations omitted).

A corporation like Mutual of Omaha "can purposefully avail itself of a forum by directing its agents or distributors to take action there."  *See Daimler*, 571 U.S. at 135 n.13.  If an agency relationship exists, then the third-party's contacts with Maryland – including the calls at issue – may be attributable to Mutual of Omaha.  *See Giannaris v. Cheng*, 219 F. Supp. 2d 687, 693 (D. Md. 2002) ("A court may exercise personal jurisdiction over a non-resident corporation based on the acts of its agents in Maryland.").

Jones is a Maryland resident and allegedly received the calls at issue while she was in Maryland. ECF 8, ¶¶ 5, 46.  And, "in the context of the TCPA, . . . personal jurisdiction is proper in the District where an unlawful communication is received."  *Mey v. Castle Law Grp.*, 416 F. Supp. 3d 580, 586 (N.D.W. Va. 2019); *see also Payton v. Kale Realty, LLC*, JHL-13-8002, 2014 WL 4214917, at *3 (N.D. Ill. Aug. 26, 2014) ("[C]ourts have repeatedly held that sending a

14

message into the forum state in violation of the TCPA is sufficient to confer specific personal jurisdiction over the defendant.").

In the Amended Complaint, Jones does not allege that Mutual of Omaha made the call to Jones. Rather, she asserts that Mutual of Omaha hired a third party to make the prerecorded call. ECF 8, ¶ 2. The Court would have personal jurisdiction over the third party based on his call to Jones. And, the Court may also exercise specific jurisdiction over Mutual of Omaha if the third party was acting as Mutual of Omaha's agent, as plaintiff alleges. *See Bilek v. Nat'l Cong. Of Emps., Inc.*, 470 F. Supp. 3d 857, 861-62 (N.D. Ill. 2020) (exercising personal jurisdiction based on an agency theory in a TCPA case).

As noted, pursuant to Rule 12(b)(6), Mutual of Omaha contends that plaintiff fails to state a claim because she does not plausibly allege that defendant is either directly or vicariously liable for the calls at issue. ECF 6 at 1. Although Mutual of Omaha would not be directly liable for the calls, it may be vicariously liable if an agency relationship existed between the defendant and the third party. At this juncture, Mutual of Omaha's Motion turns on whether plaintiff has adequately alleged facts sufficient to support a claim of vicarious liability.

Notably, the Federal Communications Commission (the "FCC") has authorized vicarious liability for violations of the TCPA. *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013). As Judge Blake of this Court recently observed, "[v]icarious liability plays an essential role in enforcing the TCPA," as "[s]ellers are 'in the best position to monitor and police TCPA compliance by third-party telemarketers,' and vicarious liability incentivizes companies to keep their telemarketers in compliance with the law." *Bradley v. DentalPlans.com*, ___ F. Supp. 3d ___, CCB-20-1094, 2022 WL 2973979, at *8 (D. Md. 2022) (quoting *Dish Network*, 28 FCC Rcd. at 6588). "The TCPA would no longer offer consumers relief from

intrusive robocalls if sellers could 'avoid potential liability by outsourcing [their] telemarketing activities to unsupervised third parties,' who are often 'judgment proof, unidentifiable, or located outside the United States.'"  *Bradley*, 2022 WL 2973979, at *8 (quoting *Dish Network*, 28 FCC Rcd. at 6588); *accord Hossfield v. Gov't Employees Ins. Co.*, 88 F. Supp. 3d 504, 510 (D. Md. 2015) ("[A] seller cannot avoid liability simply by delegating placing the call to a third-party.").

Nevertheless, vicarious liability under the TCPA "is not unlimited liability; sellers are not strictly liable for all actions taken by their telemarketers."  *Bradley*, 2022 WL 2973979, at *8. Rather, a "defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller."  *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd*, 577 U.S. 153 (2016); *Hodgin v. UTC Fire & Sec. Am. Corp., Inc.*, 885 F.3d 243, 252 (4th Cir. 2018); *accord Henderson v. United Student Aid Funds*, 918 F.3d 1068, 1072 (9th Cir. 2019) ("A plaintiff . . . must show that there is an agency relationship between a defendant and a third-party caller for there to be vicarious liability for TCPA violations.").  Accordingly, "vicarious liability under the TCPA is governed by the federal common law of agency," under which an agency relationship may be established by way of (1) actual authority; (2) apparent authority; or (3) ratification. *Hodgin*, 885 F.3d at 252 (quoting *Dish Network*, 28 FCC Rcd. at 6584).

Under traditional vicarious liability rules, principals are vicariously liable for the tortious acts of their agents within the scope of their authority.  *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 660 (4th Cir. 2019) (citing Restatement (Third) of Agency § 1.01).  "Three traditional characteristics are relevant to the existence of an agency relationship: '(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent.'"  *Worsham v. Disc. Power, Inc.*, RDB-

20-0008, 2022 WL 3100762, at *5 (D. Md. Aug. 4, 2022) (quoting *Danner v. Int'l Freight Sys. Of Wa., LLC*, 855 F. Supp. 2d 433, 454 (D. Md. 2012)). But, "the 'essential element' of an agency relationship is the principal's control over the agent's actions." *Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 980 (D. Md. 2019) (quoting Restatement (Third) of agency § 1.01 cmt. f).

"In the TCPA context, courts characterize the control necessary to establish agency as whether the principal 'controlled or had the right to control [the agent] and, more specifically, the manner and means of the [telecommunications] campaign they conducted.'" *Id.* at 980. "'Generally, the existence and scope of agency relationships are factual matters,' and are therefore often appropriately left to the jury." *Krakauer*, 925 F.3d at 660 (quoting *Metco Prods., Inc., Div. of Case Mfg. Co. v. NLRB*, 884 F.2d 156, 159 (4th Cir. 1989)).

Plaintiff has made a prima facie showing of an agency relationship based on actual authority. Her Amended Complaint provides specific allegations regarding Mutual of Omaha's ability to control the third party's telemarketing methods. In particular, Jones alleges that Mutual of Omaha had control over the manner and means of the third party's telemarketing methods by (1) having the ability to prohibit the use of prerecorded technology to generate customers but failing to do so (ECF 8, ¶¶ 41-43), and (2) providing instructions regarding the volume of calls and the states in which those calls could be made. *Id.* ¶¶ 44, 45. Moreover, Jones alleges that Mutual of Omaha "explicitly informed the third party it could make calls into Maryland[.]" *Id.* ¶ 46. These allegations are similar to those made in other TCPA cases in this Court. *See Hossfeld v. Gov't Emples. Ins. Co.,* 88 F. Supp. 3d 504, 507 (D. Md. 2015) ("Plaintiffs allege that 'in order to accept telemarking call transfers, sellers must tell their telemarketers and lead generators the

speed and volume of calls so that its operators do not become overwhelmed.'") (internal citations omitted).

Additionally, just as in *Hossfield*, 88 F. Supp. 3d at 510-12, plaintiff has alleged that she received calls from an unidentified third-party telemarketer hired to sell branded products of another company who had control over the telemarketer's practices with respect to selling its products. ECF 8, ¶¶ 2, 16, 41. Specifically, Jones alleges that the third party "was required to promote Mutual of Omaha's products[.]" *Id.* ¶ 38. Plaintiff also alleges that during the "solicitation", Mutual of Omaha's insurance services "were promoted." *Id.* ¶ 25. Moreover, she was then transferred to Eric Chambers, who identified himself as an employee of Mutual of Omaha. *Id.* ¶ 26.

Jones also alleges that Mutual of Omaha had the right to prohibit the third-party from using prerecorded messages as well as the right to provide "interim instructions" to the third-party with regard to the volume of calling and leads it would purchase. *Id.* ¶¶ 41-45. That Mutual of Omaha cites some cases in which a vicarious liability claim under the TCPA survived a motion to dismiss based on somewhat more detailed allegations does not persuade the Court that Jones's suit is subject to dismissal for failure to plead an identical level of detail. *See Hossfeld,* 88 F. Supp. 3d at 510 n.12 ("Plaintiffs 'need not plead the identity of every player in the alleged scheme nor every nuance of the relationships . . . ; indeed, the information necessary to connect all the players is likely in [GEICO's] sole possession'") (quoting *Kristensen v. Credit Payment Servs.,* 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014)).

At the motion to dismiss stage, plaintiff need only make a prima facie showing of an agency relationship. Therefore, at this stage of the proceedings, Jones need not demonstrate that Mutual of Omaha actually controlled the manner and means of the telemarketing campaign; rather,

evidence of Mutual of Omaha's "'*right* to control' the campaign will suffice." *Bradley*, 2022 WL 2973979, at *12 (quoting *Wilson*, 422 F. Supp. 3d at 980). Viewing the allegations in the light most favorable to plaintiff, Jones has sufficiently alleged that Mutual of Omaha is vicariously liable based on an agency theory of actual authority.

As mentioned, plaintiff also argues that Mutual of Omaha is vicariously liable for the calls she received based on the agency theory of ratification. ECF 15 at 9-11. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 252 (4th Cir. 2018) (citing Rest. (3d) of Agency § 4.01(1)). A party "may ratify an act by failing to object to it or to repudiate it," or by "receiving or retaining [the] benefits it generates." Rest. (3d) of Agency § 4.01, cmts. f, g. A purported principal, however, "is not bound by a ratification made without knowledge of material facts involved in the original act when the [party] was unaware of such lack of knowledge." *Id.* at § 4.06.

It is unclear whether Mutual of Omaha affirmed or knowingly acquiesced in the third party's telemarketing scheme. On the one hand, plaintiff alleges that Mutual of Omaha "knowingly and actively accept[ed] the business that originated through the illegal telemarketing calls through the issuance of insurance policies." ECF 8, ¶ 39. On the other, defendant points out that there are no allegations that Mutual of Omaha knew that the third-party was making calls on its behalf using a prerecorded voice. ECF 18 at 9. However, the Court need not decide the ratification issue, because Jones has stated a prima facie claim that the third party was acting as Mutual of Omaha's agent under the agency theory of actual authority.

And, the second and third prongs of the Fourth Circuit's specific personal jurisdiction test are easily met. The second prong asks whether the plaintiff's claims arise out of those activities

directed at the State.  *See Consulting Eng'rs*, 561 F.3d at 278.  Here, plaintiff alleges that she received a prerecorded call in Maryland on March 25, 2022, which attempted to qualify her for Mutual of Omaha's products and that resulted in her talking to Eric Chambers, an employee of Mutual of Omaha.  ECF 8, ¶¶ 21, 22, 26.  And, because the Court has personal jurisdiction over the third-party based on its call to Jones, the Court may also exercise personal jurisdiction over Mutual of Omaha.

The third and final prong asks whether exercising jurisdiction would be constitutionally reasonable.  Mutual of Omaha – a national corporation – would face little burden defending a lawsuit in Maryland.  Plaintiff alleges that Mutual of Omaha "offers insurances services in this District as a result of telemarketing calls into this District that it authorized." *Id.* ¶ 8.  Additionally, Mutual of Omaha is quite familiar with the laws of this jurisdiction, having provided insurance services to Marylanders in offices throughout the state.  Accordingly, the exercise of jurisdiction over Mutual of Omaha is constitutionally reasonable.

## IV.    Conclusion

For the reasons stated above, I shall deny the Motion.  An Order follows, consistent with this Memorandum Opinion.

Date: November 7, 2022                             _____/s/_____
                                                                        Ellen L. Hollander
                                                                        United States District Judge